**In re OSTROM–MARTIN, INC., Debtor.**

**Richard E. BARBER, Chapter 7 Trustee for Ostrom–Martin, Inc., Plaintiff,**

**v.**

**FIRST NATIONAL BANK OF CHILLICOTHE and Princeville State Bank, Defendants.**

**Bankruptcy No. 92–80099.**
**Adv. No. 92–8164.**

United States Bankruptcy Court, C.D. Illinois.

June 29, 1993.

Barry M. Barash, Barash, Stoerzbach & Henson, Galesburg, IL, for plaintiff.

Gregg N. Grimsley, Vonachen, Lawless, Trager & Slevin, Peoria, IL, for Princeville State Bank.

Michael T. Mahoney, Chillicothe, IL, Duncan G. Harris, Schiff, Hardin & Waite, Chicago, IL, for First Nat. Bank of Chillicothe.

## OPINION

WILLIAM· V. ALTENBERGER, Bankruptcy Judge.

Plaintiff, Richard E. Barber, the Chapter 7 Trustee in Bankruptcy for Ostrom–Martin, Inc. (the Debtor) filed a complaint against the FIRST NATIONAL BANK OF CHILLICOTHE (BANK OF CHILLICOTHE) and the PRINCEVILLE STATE BANK (PRINCEVILLE BANK). The Trustee alleges the following facts: That on September 3, 1991, the Debtor issued a check for $300,000.00 drawn on the Debtor's account at PRINCEVILLE BANK payable to Rumbold Valley Farms. According to the Debtor's records, these funds represented a loan to Rumbold Valley Farms. On September 4, 1991, Kevin Martin, the

President and a Director of the Debtor, placed a restrictive endorsement on the reverse side of the check "Pay to the order of Martin Farms, Inc." Beneath the restrictive endorsement, Kevin Martin added the words "Rumbold Valley Farms" and signed "Elwin Rumbold." Kevin Martin deposited the check in Martin Farms account at the BANK OF CHILLICOTHE. The BANK OF CHILLICOTHE accepted the check for deposit and credited the account of Martin farms. The PRINCEVILLE BANK paid the check when it was presented by the BANK OF CHILLICOTHE.

According to the allegations of the complaint, when the deposit slip and cancelled check were returned to Martin Farms, the Debtor, Kevin Martin, obliterated the words "Rumbold Valley" on the face of the Debtor's check and substituted the word "Martin" thereon. On the reverse side of the check, Kevin Martin obliterated the restrictive endorsement along with Elwin Rumbold's signature. On Martin Farms' deposit slip, Kevin Martin obliterated the words "Rumbold Valley Farms" and substituted "OMI" in their place. Later, in November or December, at Kevin Martin's direction, the books of the Debtor were changed to reflect that the payee of the check was Martin Farms rather than Rumbold Valley Farms. The Trustee alleges that neither Kevin Martin, Martin Farms, nor the Debtor had any authority to divert the proceeds of the check from Rumbold Valley Farms to Martin Farms. The Trustee alleges that the Defendants either negligently or in bad faith failed to ascertain that the "Rumbold Valley Farm" signature was not genuine.

PRINCEVILLE BANK filed a motion to dismiss the complaint, contending that, as a "payor" bank as defined by § 4–105 of the Uniform Commercial Code (UCC) it has no obligation to ensure that the endorsement by the payee of the instrument is genuine. 810 ILCS 5/4–105 (1993).[1] The BANK OF CHILLICOTHE filed an answer, raising numerous defenses, including that the

---

**1.** 810 ILCS 5/4–105 was formerly Ill.Rev.Stat. 1991, ch. 26, ¶ 4–105. The new classification and numbering system for the Official Illinois Compiled Statutes was authorized by Public Act 87–1005, effective January 1, 1993.

Trustee was barred from any recovery because it was never intended by the drawer of the check that Rumbold Valley Farms have an interest in the check.

In response to the motion to dismiss filed by the PRINCEVILLE BANK, the Trustee filed a motion for judgment on the pleadings, asserting that the issue was governed by § 3–419 of the UCC and that, under the general rule that a bank is generally liable for the payment of checks on forged endorsements, despite the fact that the forger is an agent or employee of the drawer, the PRINCEVILLE BANK is liable. 810 ILCS 5/3–419, formerly Ill.Rev.Stat.1991, ch. 26, ¶ 3–419. Relying on general principles of corporate law, the Trustee argues that Kevin Martin's misconduct is not in any way attributable to the Debtor and does not affect his right to recovery. PRINCEVILLE BANK moved to strike the Trustee's motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, on the basis that a motion for judgment on the pleadings is not proper until the pleadings have been closed. PRINCEVILLE BANK, having filed a motion to dismiss which is pending, has not yet answered the complaint or pled any counterclaims or defenses.

A hearing was held on PRINCEVILLE BANK's motion to dismiss the complaint on February 1, 1993. The PRINCEVILLE BANK relying on §§ 3–404, 3–405, and 3–406 of the UCC, argued that the forged endorsement was effective and that the Trustee was barred from bringing an action against the PRINCEVILLE BANK. 810 ILCS 5/3–404, 5/3–405, 5/3–406, formerly Ill.Rev.Stat. (1991), ch. 26, ¶¶ 3–404, 3–405 and 3–406. The PRINCEVILLE BANK pointed to the Debtor's failure to call the forgery to its attention. The Trustee, while not specifically raising a factual issue, took the position as to the PRINCEVILLE BANK's motion to dismiss that a factual question concerning Kevin Martin's intent existed and that the case should not be decided before the PRINCEVILLE BANK answers the complaint. Both the Trustee and the PRINCEVILLE BANK submitted written briefs on the matters raised. The BANK OF CHILLICOTHE,

even though it had filed an answer to the Trustee's complaint, joined in the motion to dismiss filed by the PRINCEVILLE BANK.

To a point, the basic facts that occurred in this case are not disputed. PRINCEVILLE BANK, having refined its position, relies on § 3–405 of the UCC, which prior to January 1, 1992, provided as follows:

§ 3–405. Impostors; Signature in Name of Payee. (1) An indorsement by any person in the name of a named payee is effective if

(a) an impostor by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee; or

(b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or

(c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.

Ill.Rev.Stat., 1989, ch. 26, ¶ 3–405. This provision is known as the "fictitious payee rule" and it provides that an indorsement by any person in the name of a payee is effective if the person signing as or on behalf of the maker or drawer does not intend the payee to have any interest in the check. See Bailey & Hagedorn, *Brady on Bank Checks*, ¶¶ 31.1, 31.7–31.9 (7th ed. 1992). This provision embodies the policy that losses caused by dishonest employees should be borne by employers or their insurers as they are in a better position to discover or protect against such a loss. *Id.* at ¶ 31.1. The Trustee does not dispute the applicability of § 3–405, but rather contends that it raises factual issues which prevent the granting of the motion to dismiss. The Trustee argues that PRINCEVILLE BANK must prove that at the time the check was drawn Kevin Martin had no intention that Rumbold Valley Farms have an interest in the check. The PRINCEVILLE BANK, suggesting that the recently amended UCC provisions are applicable to the case, contends that it prevails wheth-

er Kevin Martin never intended that the payee, Rumbold Valley Farms, have an interest in the check or whether he later diverted the check which had been originally intended to be paid to Rumbold Valley Farms.

■ Effective January 1, 1992, §§ 3–404 and 3–405 were revised, and provide as follows:

§ 3–404. Impostors; fictitious payees. (a) If an impostor, by use of the mails or otherwise, induces the issuer of an instrument to issue the instrument to the impostor, or to a person acting in concert with the impostor, by impersonating the payee of an instrument or a person authorized to act for the payee, an indorsement of the instrument by any person in the name of the payee is effective as the indorsement of the payee in favor of any person that in good faith pays the instrument or takes it for value or for collection.

(b) If (i) a person whose intent determines to whom an instrument is payable (Section 3–110(a) or (b) does not intend the person identified as payee to have any interest in the instrument, or (ii) the person identified as payee of an instrument is a fictitious person, the following rules apply until the instrument is negotiated by special indorsement:

(1) Any person in possession of the instrument is its holder.

(2) An indorsement by any person in the name of the payee stated in the instrument is effective as the indorsement of the payee in favor of any person that in good faith pays the instrument or takes it for value or for collection.

(c) Under subsection (a) or (b), an indorsement is made in the name of a payee if (i) it is made in a name substantially similar to that of the payee or (ii) the instrument, whether or not indorsed, is deposited in a depositary bank to an account in a name substantially similar to that of the payee.

(d) With respect to an instrument to which subsection (a) or (b) applies, if a person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

§ 3–405. Employer responsibility for fraudulent indorsement by employee. (a) This Section applies to fraudulent indorsements of instruments with respect to which an employer has entrusted an employee with responsibility as part of the employee's duties. The following definitions apply to this Section:

(1) "Employee" includes, in addition to an employee of an employer, an independent contractor and employee of an independent contractor retained by the employer.

(2) "Fraudulent indorsement" means (i) in the case of an instrument payable to the employer, a forged indorsement purporting to be that of the employer, or in the case of an instrument with respect to which the employer is the issuer, a forged indorsement purporting to be that of the person identified as payee.

(3) "Responsibility" with respect to instruments means authority (i) to sign or indorse instruments on behalf of the employer, (ii) to process instruments received by the employer for bookkeeping purposes, for deposit to an account, or for other disposition, (iii) to prepare or process instruments for issue in the name of the employer, (iv) to supply information determining the names or addresses of payees of instruments to be issued in the name of the employer, (v) to control the disposition of instruments to be issued in the name of the employer, or (vi) to otherwise act with respect to instruments in a responsible capacity. "Responsibility" does not include authority that merely allows an employee to have access to instruments or blank or incomplete instrument forms that are being stored or transported or are part of

incoming or outgoing mail, or similar access.

(b) For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employee entrusted with responsibility with respect to the instrument or a person acting in concert with the employee makes a fraudulent indorsement to the instrument, the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

(c) Under subsection (b), an indorsement is made in the name of the person to whom an instrument is payable if (i) it is made in a name substantially similar to the name of that person or (ii) the instrument, whether or not indorsed, is deposited in a depositary bank to an account in a name substantially similar to the name of that person.

810 ILCS 5/3–404, 5/3–405, formerly Ill. Rev.Stat.1991, ch. 26 ¶ 3–404 and ¶ 3–405.

 In this Court's view, the amended provision does not apply to this case. In the absence of an explicit statement of legislative intent that an amendment affecting substantive rights and liabilities is to be applied retrospectively, it will be given prospective application only. *Boldon v. Chiappa,* 140 Ill.App.3d 913, 95 Ill.Dec. 54, 489 N.E.2d 6 (4th Dist.1986). However, where the new provision affects only matters of procedures or remedies, it may be applied retroactively. *In re Aloma Square, Inc.,* 116 B.R. 827 (M.D.Fla.1990). This Court disagrees with the PRINCEVILLE BANK's assessment that the stat-

ute did not effect any substantive changes. *See* Bailey & Hagerdorn, *Brady on Bank Checks,* ¶ 31.12, pp. 31–26—28 (7th ed. 1992). The current UCC provisions have expanded the fictitious payee rule by introducing a provision dealing with an employer's responsibility for a fraudulent indorsement by an employee. This provision covers instances where an employee with signing authority signs a check intending that the named payee receive it but later changes his mind and steals the check, indorsing it in the name of the payee. *Id.* Under the former version, the fictitious payee rule did not apply where the checks were bona fide when written but later intercepted by a faithless employee. *Id.* at ¶ 31.13, n. 123.

 The Trustee has raised an issue concerning Kevin Martin's intent. The Trustee also contends that the motion to dismiss must be denied because there is an issue of fact whether PRINCEVILLE BANK was negligent in paying the check. Both sides have requested this Court to decide the case based on their respective motions—the Trustee on his motion for judgment on the pleadings and the PRINCEVILLE BANK on its motion to dismiss—but only if the Court would find in their favor. The Trustee opposes the PRINCEVILLE BANK's motion on the grounds questions of fact may exist. The PRINCEVILLE BANK opposes the Trustee's motion on the grounds it is premature. At this early juncture of the case, where questions of fact have been raised and the legal issues have yet to be briefed, it is unproductive for the Court to speculate as to the facts which may be proved or the defenses which may be raised. The motion to dismiss must be denied. After the pleadings have been closed and discovery completed, the parties may determine that the matter might properly be resolved on a dispositive motion, accompanied by appropriate affidavits.[2]

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to

---

**2.** The Trustee has attached to his brief a copy of notes from the Debtor's accountants. Not being

in the form of an affidavit, these notes were not considered by the Court.

**1002**

Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ORDER

For the reasons set forth in the Opinion entered this day; IT IS HEREBY ORDERED that the request to join in the motion to dismiss filed by the FIRST NATIONAL BANK OF CHILLICOTHE is allowed, and the Motion to dismiss the complaint filed by PRINCEVILLE BANK is hereby DENIED as to both the PRINCEVILLE BANK and the FIRST NATIONAL BANK OF CHILLICOTHE, and the PRINCEVILLE BANK is directed to answer the complaint within twenty-one (21) days of the date of this Order.

IT IS FURTHER ORDERED that the motion for judgment on the pleadings filed by the Trustee is hereby DENIED.