**NATIONAL ACCIDENT INSURANCE UNDERWRITERS, INC., a Delaware corporation, Plaintiff,**

**v.**

**CITIBANK, F.S.B., Defendant.**

**No. 02 C 3390.**

United States District Court, N.D. Illinois, Eastern Division.

Aug. 12, 2002.

Michael J. O'Rourke, Mitchell Bruce Katten, Richard F. Linden, Brian Michael Dougherty, O'Rourke, McCloskey & Moody, Chicago, IL, for Plaintiff.

Todd A. Rowden, Joel A. Brodsky, Joseph H. Kim, Quarles & Brady LLC, Chicago, IL, for Defendant.

## MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before the court is the motion of defendant Citibank, F.S.B. to dismiss the complaint of plaintiff National Accident Insurance Underwriters, Inc.

One of plaintiff's employees, Robert Carter, intercepted certain insurance premium checks that plaintiff's customers had made payable to plaintiff. He was not involved in any facet of plaintiff's business that gave him authority to endorse or negotiate the checks. He altered those checks by adding a "slash" (/) and additional payees, such as "Sherman" or "Sherman Imports, Inc." These alterations were made either in a different typewritten font or different handwriting than that used on the original checks. Carter maintained a checking account ("Sherman account") in the name of the altered payees with defendant. He endorsed and deposited the checks in the Sherman account; defendant accepted the checks and credited the account. The face value of the checks totaled more than $10 million. Defendant then presented the checks for payment to the various drawee banks. Plaintiff has filed a one-count complaint against defendant under 810 ILCS 5/3–420 [1] for statutory conversion. Defendant seeks dismissal of this suit.

A motion to dismiss does not challenge the merits of a lawsuit, but only tests whether the allegations of a complaint state a claim upon which relief may be granted. *Johnson v. Rivera*, 272 F.3d 519, 520–21 (7th Cir.2001). We must not only accept as true all of the well-pleaded factual allegations in the plaintiff's complaint but also draw all reasonable inferences in the plaintiff's favor. *First Ins. Funding Corp. v. Federal Ins. Co.*, 284 F.3d 799, 804 (7th Cir.2002). On the other hand, we need not accept as true "conclusory statements of law or unsupported conclusions of fact." *Id.*

Under Illinois law, the elements of a cause of action for conversion under UCC § 3–420 are: (1) plaintiff's ownership of, interest in, or possession of the check; (2) the forged or unauthorized endorsement on the check; and (3) defendant bank's unauthorized cashing of the check. *Continental Cas. Co., Inc. v. American National Bank and Trust Co. of Chicago*, 329 Ill.App.3d 686, 263 Ill.Dec. 592, 601, 768 N.E.2d 352, 361 (1st Dist.2002); *Great Lakes Higher Educ. Corp. v. Austin Bank of Chicago*, 837 F.Supp. 892, 897 (N.D.Ill. 1993) (referring to predecessor provision). Here, plaintiff has clearly alleged each of these elements. Indeed, defendant does not dispute this, but questions whether Carter was unauthorized to endorse the check, and whether it was unauthorized to

---

1. Section 5/3–420 provides:

    (a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or indorsee who did not receive

    delivery of the instrument either directly or through delivery to an agent or a co-payee. (b) In an action under subsection (a), the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument. (c) A representative, other than a depositary bank, that has in good faith dealt with an instrument or its proceeds on behalf of one who was not the person entitled to enforce the instrument is not liable in conversion to that person beyond the amount of any proceeds that it has not paid out.

cash the checks. (*Motion to Dismiss*, at 3). To support its motion to dismiss, it relies on another provision of the UCC: 810 ILCS 5/3–404(b).

Defendant argues that, under section 3–404(b), Carter was a person entitled to enforce the checks, and thus, receive payment on them. The section provides:

> (b) If (i) a person whose intent determines to whom an instrument is payable (Section 3–110(a) or (b)) does not intend the person identified as payee to have any interest in the instrument, or (ii) the person identified as payee of an instrument is a fictitious person, the following rules apply until the instrument is negotiated by special indorsement:
>
> > (1) Any person in possession of the instrument is its holder.
> >
> > (2) An indorsement by any person in the name of the payee stated in the instrument is effective as the indorsement of the payee in favor of a person who in good faith, pays the instrument or takes it for value or for collection.

810 ILCS 5/3–404(b). Defendant argues that the comments to the UCC make it clear that this section applies to forged check cases. (*Motion to Dismiss*, at 3). Defendant goes on to explain that it is the intent of the issuers of the stolen checks that is determinative and that they did not intend "Sherman" or "Sherman, Inc." to have an interest in the checks. Even though Carter may have stolen the checks and wrongfully added payees, defendant, argues, he was nevertheless the "holder of the check entitled to negotiate it." (*Motion to Dismiss*, at 3–4, *citing* 810 ILCS 5/3–404, Comment 2, Case # 5). Because Carter was a person entitle to enforce the instrument, as defendant would have it, UCC § 3–420 does not apply and the complaint, based solely on that section, must be dismissed. (*Motion to Dismiss*, at 4). For several reasons, however, defendant's arguments for dismissal are unconvincing.

■ First, under the notice pleading regime of the Federal Rules of Civil Procedure, plaintiffs are not required to plead legal theories or cite appropriate statutes. *Slaney v. The Intern. Amateur Athletic Federation*, 244 F.3d 580, 600 (7th Cir. 2001). The court does not ask whether a complaint points to the appropriate statute, but whether relief is possible under any set of facts that could be established consistent with the allegations. *Id.* Accordingly, here, defendant's argument as to appropriate statutory authority is unavailing.

■ Second, even if it were appropriate at this early stage of litigation to examine such things, defendant's arguments on the application of 810 ILCS 5/3–404(b) to this matter are, at this point at least, poorly supported. The section upon which defendant relies is known as the "fictitious payee" rule. The statutory fictitious payee rule covers situations where a bank honors a check bearing the forged indorsement of a fictional payee. *Meng v. Maywood Proviso State Bank*, 301 Ill.App.3d 128, 133, 234 Ill.Dec. 92, 702 N.E.2d 258, 262 (1st Dist.1998). By deeming the forged indorsement to be effective, the rule relieves a bank from liability and places the loss on the drawer of the checks, who is thought to be in the best position to avoid the loss. 301 Ill.App.3d 128, 134, 234 Ill.Dec. 92, 702 N.E.2d 258, 263. The Uniform Commercial Code Comment to section 3–404 specifically explains this rationale:

> If a check payable to an impostor, fictitious payee, or payee not intended to have an interest in the check is paid, the effect of subsections (a) and (b) is to place that loss on the *drawer of the check* rather than on the drawee or the Depositary Bank that took the check for collection.... [F]raud is almost always involved in cases governed by subsection (b). The drawer is in the best position

to avoid the fraud and thus should take the loss. 810 ILCS 5/3–404 (Comment (*emphasis added*)). Thus, it is clear that the section upon which defendant relies applies to situations involving drawees and their employees or agents. Indeed, that was specifically what the rule was originally designed to address. *In re Ostrom–Martin, Inc.,* 155 B.R. 997, 1001 (Bkrtcy. C.D.Ill.1993); *Govoni & Sons Construction Co., Inc. v. Mechanics Bank,* 51 Mass.App.Ct. 35, 42, 742 N.E.2d 1094, 1101 (2001). Because the earlier version of the rule did not apply when "checks were bona fide when written but later intercepted by a faithless employee," *Ostrom–Martin,* 155 B.R. at 1001, it was expanded to its present version to cover "instances where an employee with signing authority signs a check intending that the named payee receive it but later changes his mind and steals the check, indorsing it in the name of the payee." *Id.* Needless to say, there is nothing in the rule, its history, or cases analyzing it, to suggest the rule applies to situations-such as the one here-between payees and drawee banks. All of the example cited in the comments to the UCC involve fraud or forgery occurring in the drawing or issuance of checks; courts have even held that if the intent to commit forgery arise after the check is issued, section 3–404 does not apply. *In re Ostrom–Martin, Inc.,* 202 B.R. 267, 276 (Bkrtcy. C.D.Ill.1996)( § 3–406 of the UCC comes into play where intent formed after check is written). Simply put, defendants offer nothing to convince the court that the normal application of the rule should be extended to cover the instant case. Indeed, courts are generally reluctant to expand on the rule's coverage:

> [The] provision is intended to protect banks that cash instruments with such forged indorsements and is based on the assumption that as between the bank and the drawer, the latter is in a better position to prevent the loss. We have held that section 3405 should be interpreted broadly enough to carry out its purpose. But, we [have] recognized that because this provision "is a banker's exception which dramatically departs from the general UCC rule and narrows the liability of a bank, courts should be cautious in expanding the section's scope beyond its explicit rationale." Commentators have also characterized [the] section … as a banker's provision that should be strictly construed so as not to give more protection than is stated.

*Universal Premium Acceptance Corp. v. York Bank & Trust Co.,* 69 F.3d 695, 701 (3rd Cir.1995). Accordingly, we are not, at this time, ready to accept the interpretation that the fictitious payee rule requires dismissal of plaintiff's complaint in this case.

■ Finally, and as an aside, we note that defendant's invocation of section 3–404 is less than complete. Notably, it ignores subsection (d) of that provision, which provides:

> (d) With respect to an instrument to which subsection (a) or (b) applies, if a person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

810 ILCS 5/3–404(d). The allegations in plaintiff's complaint, specifically those regarding the appearance of the checks after Carter altered them, certainly-at least at the pleading stage-call into question the defendant's exercise of ordinary care in

cashing the checks. Thus, even if we were convinced by defendant's submissions that the fictitious payee rule applied to this case, we would still be unable to dismiss plaintiff's complaint.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss the plaintiff's complaint is hereby DENIED.