2016 IL App (1st) 152204

No. 1-15-2204

Fifth Division
May 27, 2016

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

|  |  |  |
|---|---|---|
| PSI RESOURCES, LLC, an Illinois Limited Liability Company, | ) ) ) | |
| | ) | Appeal from the Circuit Court |
| Plaintiff-Appellant, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 14 L 1239 |
| | ) | |
| MB FINANCIAL BANK, NATIONAL | ) | The Honorable |
| ASSOCIATION, as Successor in Interest | ) | James E. Snyder, |
| to Cole Taylor Bank, | ) | Judge Presiding. |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

_____

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal arises from plaintiff PSI Resources, LLC's breach of contract action against defendant MB Financial Bank, National Association, which the circuit court below dismissed as time-barred under the three-year statute of limitations prescribed in section 4-111 of the Uniform Commercial Code (UCC) (810 ILCS 5/4-111 (West 2012)).

¶ 2     Plaintiff raises two issues on appeal: (1) whether the circuit court erred in subjecting its claim to the 3-year limitations period governing claims arising from banking transactions involving negotiable instruments (810 ILCS 5/4-111 (West 2012)) rather than the 10-year

limitations period governing claims arising from written contracts (735 ILCS 5/13-206 (West 2012)) and (2) whether the circuit court erred in finding that plaintiff failed to plead sufficient facts supporting the tolling of the limitations period pursuant to the discovery rule.

¶ 3 For the reasons set forth below we affirm the circuit court's ruling dismissing plaintiff's claim as time-barred.

¶ 4                                    BACKGROUND

¶ 5                                     I. Parties

¶ 6 Defendant is the successor in interest to Cole Taylor Bank (Cole Taylor), the bank that held the deposit accounts at issue in the instant case.

¶ 7 Plaintiff is the assignee of the claims of three corporations: Placement Solution, Inc. (PSI), Legal Solutions, Inc. (LSI), and Technical Solutions, Inc. (TSI) (collectively, the corporations). The record does not expressly state whether these three corporations were affiliated with one another. However, the Secretary of State's corporate registration database establishes that each of the now-dissolved corporations had an identical registered agent street address, and the registered agent of each corporation was listed as "David Thomas" (for PSI), "David Thomas Jr." (for LSI), and "Tina Marie Thomas" (for TSI). See *Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill. App. 3d 935, 938 (1998) ("records from the Illinois Secretary of State's Office *** are public records that this court may take judicial notice of"); *Garrido v. Arena*, 2013 IL App (1st) 120466, ¶ 35; *JP Morgan Chase Bank, N.A. v. Bank of America, N.A.*, 2015 IL App (1st) 140428, ¶ 11 n.1. Additionally, the record indicates that the three corporations shared the same corporate controller and used the same information technology system to maintain their financial records. Finally, the account agreement and signature verification card for each corporation's

2

deposit account with Cole Taylor, which was attached to the complaint described below, was signed on September 12, 2007, and was signed by both "David Thomas" and "Tina Thomas."

¶ 8                                    II. Complaint

¶ 9        On February 6, 2014, plaintiff filed a one-count complaint against defendant in the circuit court of Cook County seeking damages for breach of contract. In this complaint, plaintiff alleges that from December 1, 2007, through November 8, 2010, each of the corporations maintained separate demand deposit accounts with Cole Taylor and that these accounts were governed by the terms and conditions of separate account agreements and account verification cards, which Cole Taylor entered into with each of the corporations.

¶ 10       Plaintiff's complaint further alleges that Cole Taylor, in breach of the account agreements, failed to exercise ordinary care in accepting and depositing the corporations' deposits. In particular, plaintiff alleges that from October 3, 2008, through March 8, 2010, PSI deposited with Cole Taylor a total of $68,901.61 in checks it had received from its clients, but Cole Taylor credited those checks to either LSI's or TSI's accounts and PSI never received payments or credits for those checks. Similarly, plaintiff alleges that from August 25, 2008, through March 3, 2010, LSI deposited with Cole Taylor a total of $117,483.98 in checks it had received from its clients, but Cole Taylor credited those checks to either PSI's or TSI's accounts, and LSI never received payments or credits for those checks. Finally, plaintiff alleges that from December 4, 2007, through November 18, 2010, TSI deposited with Cole Taylor a total of $193,957.50 in checks it had received from its clients, but Cole Taylor credited those checks to either LSI's or PSI's accounts and TSI never received payments or credits for those checks.

¶ 11    Thus, in total, plaintiff alleges that the corporations collectively sustained $380,343.09 in damages as a result of Cole Taylor's failure to exercise ordinary care in maintaining the corporations' separate deposit accounts.[1]

¶ 12    Plaintiff's complaint further alleges that Cole Taylor deposited several checks that were endorsed by the wrong corporation. Specifically, according to plaintiff, 13 checks made payable only to PSI had been wrongfully endorsed by either LSI or TSI, 17 checks made payable only to TSI had been wrongfully endorsed by either PSI or LSI, and 13 checks made payable only to LSI had been wrongfully endorsed by either PSI or TSI. Plaintiff thus alleges that Cole Taylor accepted and deposited a total of 43 checks that were endorsed by the wrong corporation.

¶ 13    Finally, plaintiff's complaint alleges that Cole Taylor failed to notify the corporations that it had applied their check deposits to the wrong bank accounts. In this regard, plaintiff admits that Cole Taylor provided each of the corporations with monthly account statements reflecting the monthly deposits and total balance in each of the corporations' accounts. Nevertheless, plaintiff alleges that these monthly account statements did not allow the corporations to discover the misapplied check deposits because they did not include images or copies of the checks deposited into the corporations' respective bank accounts.

---

[1] Attached to plaintiff's complaint were three exhibits containing lists of checks that had been allegedly misdeposited. Adding the amounts of those checks results in $380,343.09 in misdeposited checks. However, these exhibits further show that all of the allegedly misapplied check deposits were deposited into one of the three corporations' bank accounts, meaning that all of the $380,343.09 was ultimately accounted for. Specifically, while there were $68,901.61 in checks that were not deposited into PSI's account, PSI also received $309,601.48 in deposits that should have gone to LSI or TSI. While there were $117,483.98 in checks that were not deposited into LSI's account, LSI received $23,290.66 in deposits that should have gone to PSI or TSI. Finally, while there were $193,957.50 in checks that were not deposited into TSI's account, TSI received $47,450.95 in deposits that should have gone to PSI or LSI.

¶ 14                                    III. Motion to Dismiss

¶ 15        On March 21, 2014, defendant filed a motion to dismiss plaintiff's complaint under

section 2-619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West

2012)). In this motion, defendant argued that plaintiff's claim was time-barred because it was

not filed within the three-year limitation period governing claims arising from banking

transactions involving negotiable instruments (810 ILCS 5/4-111 (West 2012)). More

specifically, defendant argued that the misapplied check deposits alleged in plaintiff's

complaint occurred between December 1, 2007, and November 18, 2010, more than three

years before February 6, 2014, when plaintiff first filed its complaint.

¶ 16        On April 14, 2014, plaintiff filed a verified response to defendant's motion to dismiss,

arguing: (1) that its claim was for breach of a written contract and, therefore, was subject to a

10-year limitations period under section 13-206 of the Code (735 ILCS 5/13-206 (West

2012)), not a 3-year statute of limitations; and (2) that even under the three-year statute of

limitations, its claim remained timely filed, as the limitations period was tolled pursuant to

the discovery rule until June 2011, when the corporations first discovered that Cole Taylor

had misapplied their check deposits. As part of its argument on the second issue, plaintiff

explained the circumstances that led to the discovery of the misapplied check deposits,

namely, that the corporate controller for the three corporations had committed malfeasance

that did not become apparent until the corporations hired an outside accountant in 2011.

¶ 17        On July 9, 2014, the circuit court denied defendant's motion to dismiss, finding that

while plaintiff's claim was indeed subject to the three-year limitations statute governing

claims involving negotiable instruments, the claim nevertheless remained timely filed

pursuant to the discovery rule because plaintiff had raised facts in its response brief

indicating that plaintiff was not aware funds had been misapplied until alerted by an outside audit in June 2011.

¶ 18       On July 31, 2014, defendant filed a motion for reconsideration, arguing that plaintiff had failed to include in its complaint any factual allegations supporting the application of the discovery rule and the tolling of the limitation period. On October 28, 2014, the circuit court granted defendant's motion for reconsideration and granted plaintiff leave to file an amended complaint including factual allegations supporting the tolling of the limitations period pursuant to the discovery rule.

¶ 19                                   IV. Amended Complaint

¶ 20       On November 18, 2014, plaintiff filed a verified amended complaint, adding allegations that the corporations did not know and could not have known about the misapplied check deposits until June 2011, when an independent audit revealed to the corporations that Stan C. Cavagnetto, who served as the corporate controller for all three of the corporations, was embezzling corporate funds and falsifying the corporations' books and records.[2]

¶ 21       More specifically, plaintiff alleges that Cavagnetto, as corporate controller, was charged with maintaining the corporations' accounting records and receiving and depositing the corporations' checks into their respective bank accounts. Cavagnetto was also responsible for the corporations' information technology system and accounting software, which the corporations used to maintain their financial records. In January 2011, following the corporations' decision to outsource their payroll operations, Cavagnetto resigned from his position as the corporate controller without notice or explanation. Shortly after Cavagnetto's

---

[2] According to plaintiff's amended complaint, in 2011, plaintiff filed a separate lawsuit against Cavagnetto for misappropriation of corporate funds, breach of contract, conversion, and breach of a fiduciary duty. The record does not reveal whether this lawsuit was already resolved or is still ongoing.

resignation, in February 2011, the corporations discovered that Cavagnetto failed to file the corporations' tax returns for the fourth quarter of 2009 through the final quarter of 2010. As a result, the corporations learned that they owed the Internal Revenue Service approximately $460,000 in back taxes. The corporations thereafter also discovered that Cavagnetto had removed the network drive and backup software containing the corporations' accounting records. These discoveries, as alleged in plaintiff's amended complaint, led the corporations to hire an independent accountant to conduct an outside audit of their accounting books and records.

¶ 22    On June 17, 2011, this outside audit was completed and the independent accountant issued to the corporations a report detailing his findings. This report, according to plaintiff, revealed to the corporations, among other things, that Cole Taylor had applied their check deposits into the wrong bank accounts. Plaintiff alleges that Cavagnetto actively concealed his conduct from the corporations, including by falsifying reports to management, the outside accountant, and the corporations' insurance company in order to "mask his diversion and misappropriation of amounts paid to PSI, LSI and TSI for services rendered to their clients." Plaintiff's amended complaint thus claims that due to Cavagnetto's "acts and omissions" and Cole Taylor's failure to inform the corporations that checks had been misdeposited, the corporations did not know, and could not have known, that Cole Taylor had misapplied their check deposits until June 2011.[3]

¶ 23                    V. Motion to Dismiss Amended Complaint

¶ 24    On December 9, 2014, defendant once again moved under section 2-619(a)(5) to dismiss plaintiff's amended complaint. In this motion, defendant argued that the allegations in

---

[3] It is not clear whether the misdeposited checks were a result of Cavagnetto's malfeasance, given that no money was missing and it was all ultimately accounted for, albeit in the incorrect corporation's account.

7

plaintiff's amended complaint did not warrant application of the discovery rule as they merely established the corporations' own "lack of internal due diligence" in overseeing their own employee and their own financial operations. Defendant further argued that a cursory review of any of the 108 account statements, which Cole Taylor issued to the corporations on a monthly basis, would have easily revealed to the corporations whether certain checks were, or were not, deposited into the corporations' respective bank accounts.

¶ 25 On March 4, 2015, the circuit court granted defendant's section 2-619(a)(5) motion and dismissed plaintiff's complaint with prejudice. In granting defendant's motion to dismiss, the circuit court explained that it agreed with defendant that the factual allegations included in plaintiff's amended complaint did not support the tolling of the limitation period. The court further explained that the monthly account statements issued by Cole Taylor to the corporations reflected the monthly deposits and balance in each of the corporation's bank accounts and were thus "sufficient to put a reasonable person on notice whether certain checks were, or were not, deposited into specific accounts." The circuit court accordingly concluded that plaintiff failed to plead facts supporting the tolling of the limitations period, and it, therefore, dismissed plaintiff's complaint as time-barred.

¶ 26 On April 2, 2015, plaintiff filed a motion for reconsideration, arguing once again that its claim was timely filed pursuant to the discovery rule. The circuit court, however, denied plaintiff's motion for reconsideration on July 9, 2015. Plaintiff timely filed a notice of appeal, and this appeal follows.

¶ 27 ANALYSIS

¶ 28 On appeal, plaintiff asks us to review whether the circuit court erred in granting defendant's motion to dismiss brought under section 2-619(a)(5) of the Code. Section 2-

619(a)(5) provides that a defendant may file a motion for dismissal when an action has not been commenced within the time limited by law (735 ILCS 5/2-619(a)(5) (West 2012)). Section 2-619 is designed to afford litigants a means to dispose of issues of law and easily proven issues of fact at the onset of litigation. *Turner v. 1212 S. Michigan Partnership*, 355 Ill. App. 3d 885, 891 (2005) (quoting *Davis v. Chicago Police Board*, 268 Ill. App. 3d 851, 854 (1994)). A motion to dismiss under section 2-619 admits the legal sufficiency of all well-pleaded facts but allows for the dismissal of claims barred by an affirmative matter defeating those claims or avoiding their legal effect. *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 83 (citing *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006)).

¶ 29　　When ruling on a section 2-619 motion to dismiss, a trial court must interpret all pleadings, affidavits, and other supporting documents in the light most favorable to the nonmoving party. *Caywood v. Gossett*, 382 Ill. App. 3d 124, 129 (2008). The defendant has the initial burden of proving the affirmative defense relied upon in its motion to dismiss. *Kirby v. Jarrett*, 190 Ill. App. 3d 8, 12 (1989) (explaining that a defendant raising a statute of limitations defense in a motion to dismiss bears the initial burden of demonstrating that the action in question was not commenced within the applicable limitation period). Once the defendant, however, has met this burden, it becomes incumbent upon the plaintiff to set forth facts sufficient to avoid the statutory limitation. *Cundiff v. Unsicker*, 118 Ill. App. 3d 268, 272 (1983); *Blair v. Blondis*, 160 Ill. App. 3d 184, 188 (1987) (explaining that a plaintiff seeking to come within the discovery rule exception to the limitations period has the burden of proving the date of discovery).

¶ 30　　An appeal from a section 2-619 dismissal requires the same analysis as an appeal following a grant of summary judgment; in both instances, "the reviewing court must

ascertain whether the existence of a genuine issue of material fact should have precluded the dismissal, or absent such an issue of fact, whether dismissal is proper as a matter of law." *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 178 (2007). In making this determination, we apply a *de novo* standard of review. *O'Toole v. Chicago Zoological Society*, 2015 IL 118254, ¶ 16. Under the *de novo* standard, we perform the same analysis that a circuit court judge would perform. *First Merit Bank, N.A. v. Soltys*, 2015 IL App (1st) 140100, ¶ 13.

¶ 31    In the case at bar, plaintiff argues that the circuit court made two errors in dismissing plaintiff's amended complaint. First, plaintiff argues that the circuit court erred by subjecting its claim to a 3-year limitations period rather than a 10-year limitations period. Second, plaintiff argues that even if the three-year period applied, the circuit court erred in finding that plaintiff had failed to plead sufficient facts supporting the tolling of the limitations period pursuant to the discovery rule. We address each of plaintiff's arguments in turn.

¶ 32    I. The Applicable Statute of Limitations

¶ 33    Plaintiff first argues that the circuit court applied the incorrect statute of limitations when it determined that a 3-year statute of limitations applied instead of a 10-year statute of limitations. Plaintiff claims that the applicable statute of limitations is found in section 13-206 of the Code, which provides, in relevant part:

"Ten year limitation. Except as provided in Section 2-725 of the 'Uniform Commercial Code', actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing and actions brought under the Illinois Wage Payment and Collection Act shall be commenced

10

within 10 years next after the cause of action accrued[.]" 735 ILCS 5/13-206 (West 2012).

¶ 34    By contrast, defendant claims the applicable statute of limitations is found in section 4-111 of the UCC, which provides:

"An action to enforce an obligation, duty or right arising under this Article must be commenced within 3 years after the cause of action accrues." 810 ILCS 5/4-111 (West 2012).

¶ 35    On appeal, plaintiff argues that the circuit court should have applied the 10-year limitations period because its claim constituted a "strict common law breach of contract action." Defendant, on the other hand, asserts that plaintiff's claim relates to banking transactions involving negotiable instruments and that the circuit court thus properly applied the three-year limitation statute governing claims under Article 4 of the UCC to plaintiff's claim.

¶ 36    In support of its argument, defendant cites our decision in *Continental Casualty Co. v. American National Bank & Trust Co. of Chicago*, 329 Ill. App. 3d 686, 690 (2002), where we held that common-law breach of contract claims relating to banking transactions involving negotiable instruments are subject to the three-year limitation period. We agree with defendant that this First District case is directly on point, and we accordingly find that the circuit court properly applied the three-year limitation period to plaintiff's claim.

¶ 37    In *Continental*, a corporation brought a common-law breach of contract action against a bank, alleging that the bank failed to exercise ordinary care in maintaining the corporation's deposit account and that, as a result, the corporation's comptroller was able to embezzle corporate funds into his own personal account. *Continental,* 329 Ill. App. 3d at 692. The trial

11

court, however, dismissed the corporation's claim as time-barred under the three-year statute of limitations set forth in section 4-111 of the UCC. *Continental,* 329 Ill. App. 3d at 690. On appeal, the corporation argued that its claim constituted a common-law breach of contract action subject to the Code's 10-year limitations period, not a UCC claim subject to the UCC's three-year limitations period. *Continental,* 329 Ill. App. 3d at 696. The bank, on the other hand, argued that the corporation's claim, properly characterized, was either a UCC claim for conversion of a negotiable instrument (810 ILCS 5/3-420(a) (West 1994)) or a UCC claim for improper payment (810 ILCS 5/4-401(a) (West 1994)), both of which are governed by a three-year limitations period. 810 ILCS 5/3-118(g) (West 1994) (applying a three-year limitations period to claims for conversion of a negotiable instrument); 810 ILCS 5/4-111 (West 1994) (applying a three-year limitation period to claims arising under article 4 of the UCC, including claims for improper payment).

¶ 38    We did not find either party's argument persuasive. First, we explained that the corporation's claim was not a UCC conversion claim, nor was it displaced by the UCC merely because the bank also could have raised a UCC claim for improper payment. *Continental*, 329 Ill. App. 3d at 697-98. Instead, we agreed with the corporation that the claim was properly characterized as a common-law breach of contract action. *Continental*, 329 Ill. App. 3d at 699 ("The UCC does not immunize a bank from its own failure to exercise ordinary care in handling its depositor's accounts."). Second, we determined that although the claim was for breach of contract, it nevertheless was subject to the UCC's three-year limitations period because it was related to banking transactions involving negotiable instruments. *Continental*, 329 Ill. App. 3d at 700.

¶ 39     In reaching this conclusion, we explained that where two statutes of limitations arguably apply to the same cause of action " 'the one which more specifically relates to the action must be applied.' " *Continental*, 329 Ill. App. 3d at 699 (quoting *Haddad's of Illinois, Inc. v. Credit Union 1 Credit Union*, 286 Ill. App. 3d 1069, 1072 (1997)). We went on to explain that the 10-year limitations statute found in section 13-206 of the Code is a "catch-all" statute that applies not only to written contracts, but also to actions for bonds, bills of exchange, promissory notes, written leases, and other evidences of indebtedness. *Continental*, 329 Ill. App. 3d at 699. By contrast, we noted that section 4-111 of the UCC "specifically relates to a bank's duties and obligations to its customer when the customer has filed a timely claim." *Continental*, 329 Ill. App. 3d at 699-700. We noted that a primary purpose of a statute of limitations was to promote certainty and finality in the administration of affairs and found that "[a]pplying the 10-year limitations period to a breach of contract claim involving negotiable instruments that are deposited into and paid by the banking system would not foster and promote commercial finality and certainty." *Continental*, 329 Ill. App. 3d at 700. We accordingly held that the corporation's common-law breach of contract action was governed by the three-year limitations statute because it was more specific than the Code's 10-year limitations period. *Continental*, 329 Ill. App. 3d at 700. See also *Newell v. Newell*, 406 Ill. App. 3d 1046, 1050 (2011) (applying the three-year statute of limitations under section 4-111 of the UCC instead of the 10-year statute of limitations under section 13-206 of the Code and noting that "[the plaintiff's] allegations of common law breach of contract do not insulate his cause of action from the applicable UCC statute of limitations").

¶ 40     In the case at bar, just as in *Continental*, we find plaintiff's common-law breach of contract action relates to banking transactions involving negotiable instruments, which are

13

governed by the three-year limitations statute. See *Continental*, 329 Ill. App. 3d at 700. Indeed, plaintiff's underlying complaint in the present case, alleging that Cole Taylor failed to exercise ordinary care in accepting the corporations' check deposits, closely mirrors the complaint raised in *Continental*, which was also predicated on allegations pertaining to a bank's failure to exercise ordinary care in maintaining a corporation's deposit account. Our decision in *Continental*, applying the three-year limitation statute, is thus directly on point, and we accordingly find that the circuit court did not err in subjecting plaintiff's claim to the three-year limitations period.

¶ 41    Plaintiff attempts to distinguish the present case from our decision in *Continental* because the corporation in *Continental* "had a possible UCC 4-401(a) claim against the bank for improper payment." See *Continental,* 329 Ill. App. 3d at 698. We do not find this argument persuasive. As noted above, in *Continental* we specifically acknowledged that the corporation was suing the bank under a common-law breach of contract theory and not for improper payment under section 4-401 of the UCC. *Continental*, 329 Ill. App. 3d at 699. We nevertheless applied the three-year limitations period because the claim involved banking transactions involving negotiable instruments, an area of the law that is specifically regulated by the UCC. *Continental*, 329 Ill. App. 3d at 700 ("[a]pplying the 10-year limitations period to a breach of contract claim involving negotiable instruments that are deposited into and paid by the banking system would not foster and promote commercial finality and certainty"). We further note that the UCC states that it is to be applied in order to promote its underlying purposes and policies, which include "simplify[ing], clarify[ing], and moderniz[ing] the law governing commercial transactions" and "permit[ting] the continued expansion of commercial practices through custom, usage, and agreement of the parties." 810

ILCS 5/1-103(a) (West 2012). We agree with the *Continental* court that applying the 10-year statute of limitations to a claim such as that present in the case at bar would not further the purposes of the UCC or promote commercial finality and certainty. Accordingly, we find that the circuit court properly subjected plaintiff's claim to the three-year limitations statute set forth in section 4-111 of the UCC.

¶ 42                                    II. Discovery Rule

¶ 43        Plaintiff next argues that even if the three-year statute of limitations applied, the statute of limitations had not passed because it was tolled pursuant to the discovery rule until June 2011. While section 4-111 provides that "[a]n action to enforce an obligation, duty or right arising under this Article must be commenced within 3 years after the cause of action accrues" (810 ILCS 5/4-111 (West 2012)), there is no definition of when a cause of action "accrues," nor is there any provision as to whether any conduct can toll the running of the statute of limitations. "[T]herefore, the pre-UCC law governs the determination of these questions." *Continental*, 329 Ill. App. 3d at 700.

¶ 44        Several courts have applied the discovery rule to breach of contract claims governed by the section 4-111 statute of limitations. See, *e.g.*, *Continental*, 329 Ill. App. 3d at 700-01; *Newell*, 406 Ill. App. 3d at 1051. "Under the discovery rule, a party's cause of action accrues when the party knows or reasonably should know of an injury and that the injury was wrongfully caused." *Clay v. Kuhl*, 189 Ill. 2d 603, 608 (2000). "[T]he discovery rule protects a plaintiff *only* until he knows or reasonably should know of the injury, not until he has actual knowledge." (Emphasis in original.) *Gale v. Williams*, 299 Ill. App. 3d 381, 387 (1998). "The issue [of] whether an action was brought within the time allowed by the discovery rule is generally resolved as a question of fact. [Citations.] The question may be

15

determined as a matter of law, however, when the answer is clear from the pleadings. [Citations.]" *Clay*, 189 Ill. 2d at 609-10.

¶ 45      In the case at bar, plaintiff argues that the discovery rule should apply in the instant case because the corporations did not become aware that the checks had been misdeposited until June 2011, when an independent accountant performed an audit of the corporations' accounts and records after the resignation of the corporations' controller.[4] It is important to note that plaintiffs are expressly *not* arguing that the statute of limitations should be tolled due to fraudulent concealment.[5] Plaintiff's main argument is that the monthly bank statements provided by defendant did not contain sufficient information to place the corporations on notice that their checks were being misdeposited or, at least, there was a question of fact on that issue. We do not find this argument persuasive.

¶ 46      Plaintiff does not dispute that it received monthly account statements from the bank, and defendant attached one of those bank statements to its reply in support of its motion to dismiss as an example. The bank statement included in the record on appeal[6] has a section in the center of the statement's first page that lists the beginning balance at the start of the statement period, additions to the account, deductions from the account, and the ending balance at the end of the statement period. Directly underneath this summary is a section entitled "Additions to Your Account," in which the deposits made are listed. The list is itemized by date, with the amount deposited on that date and a description such as the word "DEPOSIT." Plaintiff argues that this does not provide sufficient information to alert the

---

[4] Again, it is unclear whether the controller's conduct had any relation to the misdeposited checks as all of the money was accounted for, even if it was deposited into the wrong corporation's account.

[5] Indeed, one point heading in plaintiff's reply brief is "Plaintiff is not claiming any fraudulent concealment by defendant, and it is irrelevant," and the brief characterizes defendant's discussion of fraudulent concealment as "nothing more than a red herring."

[6] The bank statement states on the top "Page 1 of 23," but only the first page is included in the record on appeal. It is not clear what the rest of the statement contains, but there is no dispute that the statements the corporations received did not include copies of the checks.

corporations to any wrongdoing because the statements only listed the deposits by day, not by transaction, so there was no way to tell whether a single day's deposit was one deposit or several. Plaintiff also takes issue with the description of the deposit as simply "DEPOSIT," with no names or more detailed descriptions. Plaintiff also notes that there were no copies of any deposit slips or deposited checks as part of the statement. In short, plaintiff states that "[o]ne look at that account statement clearly shows that a reasonable person would not be alerted to any wrongdoing." We do not find this argument persuasive.

¶ 47        Plaintiff is correct that defendant could have included more detail in the bank statements to make absolutely clear every transaction occurring within the statement period. However, the standard in applying the discovery rule is not "absolute clarity." Instead, the running of the limitation period commences at the point when "the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 416 (1981); *Hoffman v. Orthopedic Systems, Inc.*, 327 Ill. App. 3d 1004, 1011 (2002). "At that point, the burden is upon plaintiff to inquire further as to the existence of a cause of action." *Hoffman*, 327 Ill. App. 3d at 1011 (citing *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981)). In the case at bar, even if a single misdeposited check may have been overlooked, even a cursory review of some of the account statements would have caused a reasonable person to inquire further well before June 2011. For instance, according to the exhibits attached to plaintiff's amended complaint, there were several months where TSI was missing over $25,000 in checks that should have been deposited to its account.[7] Similarly, there were several months where PSI received over $20,000 in checks

_____

[7] In December 2007, there was $29,892.75 missing from TSI's account, and in September 2009, there was $27,827.50 missing from TSI's account.

that should have been deposited in the accounts of the other two corporations.[8] The bank statement contained in the record shows that as of August 2008, PSI had a balance ranging from $66,751.42 at the beginning of the month to $43,880.98 at the end of the month. An unexplained difference of over $20,000 represents a significant proportion of such an account, and it certainly should have raised a red flag for plaintiff to inquire further. Accordingly, we cannot agree with plaintiff that it did not have sufficient notice until June 2011 of any wrongdoing.

¶ 48    We are also not persuaded by plaintiff's attempt to draw analogies between its case and *Timberline, Inc. v. Towne*, 225 Ill. App. 3d 433 (1992), and *Draper v. Frontier Insurance Co.*, 265 Ill. App. 3d 739 (1994), as those cases have quite different facts and legal issues than the case at bar. *Timberline* concerned the issue of whether a piece of real property was described with sufficient specificity in a contract such that specific performance of the contract could be awarded. *Timberline*, 225 Ill. App. 3d at 443. *Draper* concerned the issue of when the cause of action for a wrongful cancellation of an insurance policy accrued. *Draper*, 265 Ill. App. 3d at 744. Both cases found questions of fact, which is presumably why plaintiff cited them. However, neither case sheds any light on the issue before us, namely, whether the statute of limitations was tolled until June 2011 by the discovery rule, and we consequently do not find them instructive in determining that issue.

¶ 49    In the case at bar, we agree with the circuit court that the monthly account statements provided by defendant provided sufficient information for plaintiff to be put on notice that wrongful conduct had occurred. Accordingly, we affirm the circuit court's dismissal of plaintiff's amended complaint.

---

[8] In December 2007, PSI received $29,892.75 in deposits it was not entitled to; in August 2009, it received $21,538.76; and in September 2009, it received $25,077.63.

¶ 50                                    CONCLUSION

¶ 51        The dismissal of plaintiff's amended complaint is affirmed because (1) plaintiff's claim is

governed by a three-year statute of limitations and (2) the running of the statute of limitations

was not tolled by the discovery rule.

¶ 52        Affirmed.