2020 IL App (1st) 180174-U

No. 1-18-0174

Order filed May 22, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| HILCO CAPITAL, LP, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 L 13008 |
| | ) | |
| BRYAN CAVE, LLP; TERENCE J. THUM; MARK G. | ) | Honorable |
| STINGLEY,;BRAGAR WEXLER EAGEL & SQUIRE, | ) | Brigid McGrath, |
| LLP; LAWRENCE P. EAGEL; THE FRANKLIN LAW | ) | Judge, Presiding. |
| FIRM; THOMAS M. FRANKLIN; KIRBY | ) | |
| MCINERNEY, LLP; and JEFFREY H. SQUIRE, | ) | |
| | ) | |
| Defendants, | ) | |
| (Bryan Cave, LLP and Terrence J. Thum, Defendants- | ) | |
| Appellees). | ) | |

JUSTICE HALL delivered the judgment of the court.
Presiding Justice Hoffman and Justice Delort concurred in the judgment.

**ORDER**

¶ 1     *Held*: We affirm where the trial court properly found that: (1) plaintiff's initial complaint was filed within the statute of limitations when it was filed within two years of the final ruling in the Delaware case; (2) plaintiff's recoverable damages were limited to what it would have been entitled to recover in the Delaware case; (3) plaintiff's

count II in its third amended complaint raised a new cause of action that was time-barred; (4) plaintiff's recoverable damages were properly reduced to account for the allocation of proceeds agreement in the 2005 settlement agreement; and (5) plaintiff failed to raise a genuine issue of material fact as to proximate cause and summary judgment was warranted.

¶ 2    Plaintiff Hilco Capital, LP filed a legal malpractice action against defendants Bryan Cave, LLP (Bryan Cave), Terence J. Thum (Thum), Mark G. Stingley (Stingley) , Bragar Wexler Eagel & Squire, LLP (Bragar Wexler), Lawrence P. Eagel (Eagel), The Franklin Law Firm (Franklin Law), Thomas M. Franklin (Franklin), Kirby McInerney, LLP (Kirby McInerney), and Jeffrey H. Squire (Squire) in November 2010 to recover damages for allegedly negligent legal advice. During the course of the proceedings over the span of several years, all defendants were dismissed except defendants Bryan Cave and Thum. The circuit court subsequently granted summary judgment in January 2018 in favor of Bryan Cave and Thum on plaintiff's third amended complaint, and plaintiff appeals.

¶ 3    On appeal, plaintiff contends that the circuit court erred when it: (1) partially granted defendants' section 2-619(a)(5) (735 ILCS 5/2-619(a)(5) (West 2012)) motion to dismiss plaintiff's complaint and found that plaintiff's damages were limited to the amount it would have recovered under the settlement agreement if such agreement had been enforceable in full on July 26, 2013; (2) partially granted defendants' motion to strike count II of plaintiff's third amended complaint which alleged that defendants failed to disclose a conflict of interest on May 12, 2016; (3) partially granted defendants' summary judgment motion and found that its recoverable damages were limited to $3.34 million and rejected plaintiff's supplemental damages disclosure

on March 9, 2017; and (4) granted defendants' renewed motion for summary judgment as to proximate cause on January 11, 2018. For the reasons set forth herein, we affirm.[1]

¶ 4                                   I. BACKGROUND

¶ 5       Plaintiff's complaint alleged legal malpractice against defendants based on events which occurred in two prior cases, the Payless litigation in Missouri (the underlying case), and the declaratory judgment action in Delaware (the Delaware case). Plaintiff is a Delaware limited partnership that does business in the state of Illinois, Bryan Cave is an Illinois limited partnership, and Thum was an attorney employed by Bryan Cave in its Kansas City, Missouri office.[2]

¶ 6                           A. The Payless Litigation-Factual Background

¶ 7       Payless Cashways (Payless) was a publicly traded company that operated home improvement stores in the United States, and Congress Financial Corporation (Congress) was a financial institution that provided financing to Payless under a Loan and Security Agreement dated November 17, 1999, (the credit agreement). Under the credit agreement, Congress made funds available to Payless according to a formula based on a percentage of reported costs of Payless' merchandise inventory as certified to Congress on daily or weekly certifications provided by Payless Chief Financial Officer, Robert Witaszak.

¶ 8       Plaintiff joined Congress in providing funding to Payless on or about January 31, 2001, based on its review of the daily certifications that Payless had previously provided to Congress. On or about that date, plaintiff and Payless entered into a junior secured credit facility (the junior

---

[1] This case was fully briefed on March 5, 2019, and assigned to the authoring justice's inventory of cases on February 21, 2019. The authoring justice first circulated a proposed disposition to Justice Hoffman and Justice Delort on May 14, 2020.

[2] The other defendants were also individual attorneys or law firms that were part of the proceedings in the underlying case.

credit agreement) for $15 million, funded by plaintiff, repayable as follows: $2 million on June 15, 2001, $3 million on June 29, 2001, $4 million on July 13, 2001, and $6 million on July 27, 2001. Plaintiff did not clarify in its pleadings how that relationship was formed.

¶ 9     Unknown to plaintiff, Payless was within the "zone of insolvency" beginning in December 2000, but failed to disclose it to either Congress or plaintiff. On or about June 4, 2001, prior to making any payments to plaintiff under the junior credit agreement, Payless filed a voluntary Chapter 11 petition for reorganization in the United States Bankruptcy Court for the Western District of Missouri.

¶ 10    In approximately 2002 or 2003, plaintiff retained defendants Bryan Cave and Thum to pursue claims and file a lawsuit in Missouri against the officers of Payless, including claims for negligent misrepresentation, breach of fiduciary duty and fraud.[3] Thum was presented to plaintiff by Bryan Cave as an expert on Missouri insurance law. Subsequently, Eagel, Bragar Wexler, Bryan Cave and Thum jointly filed the underlying case as lead counsel on plaintiff's behalf in the United States District Court for the Western District of Missouri, Western Division (case number 03-0390-CV-W-NKL). They represented plaintiff throughout the underlying case, including at the time of the settlement and thereafter in other litigation.

¶ 11    During discovery, plaintiff learned that Payless was insured under three separate $10 million layers of insurance coverage for a total of $30 million. AIG was the primary insurer that provided the first $10 million layer of coverage, whose limit of liability was reduced by the cost of defense applicable to the underlying case. Federal Insurance Company (Federal) was the insurer

---

[3] The other defendants, who were additional attorneys and law firms, were subsequently added over the course of the litigation.

for the first layer of excess coverage of $10 million and Twin Cities was the insurer for the second layer of excess coverage.

¶ 12    Plaintiff, represented by defendants Eagel, Bragar Wexler, Thum and Bryan Cave, filed a motion for partial summary judgment in the underlying case on the issues of whether Payless' senior officers were negligent in permitting Payless to misrepresent the amount of merchandise inventory to plaintiff and whether they breached fiduciary duties to plaintiff. Additionally, plaintiff, through counsel, made an aggregate demand for the Payless parties to settle the underlying case for the remaining limits available under the primary insurance policy and the two excess policies.

¶ 13    While plaintiff's motion for partial summary judgment was pending in the underlying case, the parties agreed to attempt settlement, however, only AIG participated in the mediation. The mediator suggested a conditional "high-low" settlement wherein the low portion of the settlement would be within AIG's layer of coverage, and the high portion of the settlement would be within the excess insurers' layers of coverage.  Conditional access to the excess insurers' coverage would be based on later arbitration where the arbitrator would be asked to determine a single "yes or no" question.  If the arbitrator answered yes, a consent judgment would be entered in favor of plaintiff and Congress in the amount of the higher settlement amount; if the arbitrator answered no, plaintiff and Congress would keep the lower settlement amount.

¶ 14    According to plaintiff, Thum advised it that pursuant to a specific Missouri practice and procedure, Federal did not need to consent to the high-low settlement and would be required to pay the full balance of any settlement amount above AIG's eroding limits policy.  Further, Thum advised that plaintiff would be able to compel Federal to pay the settlement amount if plaintiff

received an arbitration finding in its favor as long as the policy applied, the settlement amount was reasonable, and the settlement was non-collusive.

¶ 15    Counsel further advised plaintiff regarding whether it should agree to the conditional settlement and release Payless from all liability and reiterated that Federal need not participate in the mediation to be bound by any settlement agreement with Payless. The settlement was conditioned on the approval of the parties and AIG, but not the approval of any excess insurer.

¶ 16    After the mediation, on the affirmative advice and recommendation of Thum and Eagel, plaintiff conditionally agreed to the financial terms and wording of a potential settlement agreement for all claims in the underlying case as discussed during mediation. Plaintiff's counsel subsequently drafted proposed settlement agreements in the underlying case, with the final version being accepted on January 4, 2005, and a court-mandated settlement conference before a federal magistrate judge was scheduled for the following day.  By letter dated January 3, 2005, to plaintiff and copied to Thum, Eagel advised plaintiff that if it prevailed in the arbitration, it would receive a net amount of 46.4% of the total amounts recovered against Payless.

¶ 17    Plaintiff subsequently executed the settlement agreement prepared by Thum and Eagel and settled the underlying case without Federal's consent to the settlement, and the final settlement was memorialized in a Memorandum of Understanding (MOU) dated January 4, 2005, which was also prepared by Thum and Eagel.  The settlement became binding on plaintiff as of the date of execution, even though Federal had not participated in the mediation or consented to the settlement.

¶ 18    Plaintiff did not participate in the January 5, 2005, settlement conference before the federal magistrate judge because Thum and Eagel did not advise it to participate.  At the conference, it

was disclosed that Payless had demanded that AIG tender its full policy limits because of the likelihood of an adverse judgment in an amount that would have exceeded the available insurance limits for the first layer of coverage. Additionally, plaintiff was unaware that the Missouri practice and procedure rule upon which Thum and Eagel based their advice applied to duty-to-defend claims under Comprehensive General Liability insurance covering bodily injury and property damage, but not to Directors & Officers insurance covering the claims against Payless in the underlying case. Plaintiff was never advised to secure independent counsel since plaintiff and Congress were each seeking damages from the same layers of Payless' insurance and plaintiff's damages were greater than Congress'. Further, plaintiff was never advised that Federal needed to be given a reasonable opportunity to participate in the settlement process in order to be bound by the terms of any settlement agreement with Payless. Nor was plaintiff advised that Federal could avoid paying under the settlement agreement if it could establish that it had not unreasonably withheld its consent to the settlement because it was not given a reasonable opportunity to participate in the settlement.

¶ 19    After the settlement agreement was entered in court, the matter proceeded to arbitration on the question of whether Payless's senior officers and directors knew or should have known that the certifications were false. At the arbitration hearing, Payless stipulated that the certifications were false and admitted that when the certifications were presented to plaintiff and Congress, two high-level Payless employees knew or should have known that they were false. The arbitration subsequently resulted in a finding in favor of plaintiff and Congress.

¶ 20    Under the previously executed MOU, the Payless officers and directors agreed to confess judgment and consent to the entry of judgment in the amount of $15.5 million plus interest in the

amount of 3.365%. The MOU further provided that Payless would assign all rights it had under the Federal policy to plaintiff and Congress, and that Payless would cooperate in follow-up proceedings against Federal seeking indemnification for the unsatisfied portion of the judgment.

¶ 21     Subsequent to entry of the judgment, AIG paid its remaining limits of coverage, but Federal refused to pay the balance owed under the judgment.

¶ 22                                B.  The Delaware Case

¶ 23     Federal filed a declaratory action for coverage against plaintiff in Delaware (case number 06C2248), the Delaware case, in which it sought a declaration that it did not have an obligation to cover any portion of the judgment in the underlying case.  Thum did not represent plaintiff in the Delaware case.

¶ 24     On November 20, 2008, a jury in the Delaware case found that Federal did not unreasonably withhold its consent to the Payless settlement in the underlying case, and that Payless breached the policy by settling before Federal decided whether it would consent to the settlement. Had the jury found in plaintiff's favor, it would have been entitled to $7,233,542.15 plus post-judgment interest from May 18, 2005.

¶ 25     Plaintiff appealed the judgment in the Delaware case, but the judgment was affirmed on August 10, 2009.  *Hilco Capital, L.P. v. Federal Ins. Co.*, 978 A.2d 174 (Del. 2009).  The Delaware Supreme Court determined that Federal had not breached the policy and affirmed the jury's determination that Payless breached the policy. Additionally, the court found as a matter of law that contrary to defendants' advice to plaintiff, Federal had no obligation under the law applicable to the underlying case to pay any portion of the judgment.  The  court concluded that Federal had been willing to negotiate, but was precluded from participating in the January 5, 2005, settlement

conference because the settlement agreement had been executed the day before; AIG had not tendered its full policy limits, thereby not triggering Federal's excess coverage; Federal's consent was required before it could be bound to the terms of the settlement and judgment; Federal had not consented to the settlement agreement; and its consent was not unreasonably withheld.

¶ 26                                  C.  The Legal Malpractice Case

¶ 27    Plaintiff filed its initial legal malpractice complaint against the multiple defendants on November 15, 2010, in the circuit court of Cook County.  All of the defendants filed combined motions to dismiss under sections 2-615 (735 ILCS 5/2-615 (West 2010)) and 2-619 (735 ILCS 5/2-619 (West 2010)) of the Code of Civil Procedure (Code).  The defendants' section 2-615 motions were granted on July 25, 2011, and plaintiff was granted leave to file its amended complaint by September 6, 2011, which it filed on August 29, 2011.

¶ 28    Defendants again filed motions to dismiss plaintiff's complaint, and the circuit court granted defendants' section 2-615 (735 LCS 5/2-615 (West 2010)) motions to strike plaintiff's amended complaint without prejudice on March 7, 2012.  In ruling on the motions, the circuit court noted that the first 2-615 motion was granted on the basis that plaintiff had not adequately set forth the allegations of the relationships and duties owed to it by the individual defendants.  The court granted plaintiff leave to file its second amended complaint by April 11, 2012, which it filed on June 28, 2012.

¶ 29    Defendants once again filed motions to dismiss plaintiff's complaint.  The circuit court subsequently granted the section 2-615 (735 ILCS 5/2-615 (West 2012)) motions of defendants Franklin, Franklin Law, Squire, Kirby McInerney, and Stingley; granted Stingley's section 2-619

(735 ILCS 5/2-619 (West 2012)) motion to dismiss; and also dismissed those defendants from the case with prejudice on February 14, 2013.

¶ 30    On the same date, the circuit court denied the joint section 2-615 motion of defendants Bryan Cave, Thum, and Bragar Wexler, and set a briefing schedule for the remaining defendants' joint section 2-619(a)(5) (735 ILCS 5/2-619(a)(5) (West 2012)) motion to dismiss.

¶ 31    In their section 2-619(a)(5) motion, defendants contended that plaintiff's complaint was time-barred under both the Illinois two-year statute of limitations and Missouri's five-year statute of limitations. Defendants claimed that plaintiff knew in February 2005 that Federal denied any obligation to it under the settlement agreement and that it could not recover anything against Federal without prevailing in the Delaware case. Defendants further claimed that even if that information failed to put plaintiff on notice of its claims and it only settled with Payless because it thought it would be able to collect from Federal, then plaintiff would have been on notice when its motion for summary judgment in the Delaware case was denied and it knew the case was going to trial, which occurred more than two years before plaintiff filed the present suit.

¶ 32    At the hearing on defendants' section 2-619(a)(5) motion on July 25, 2013, the circuit court stated that although plaintiff knew prior to August 2008 that a court found that Federal had the right to consent to any settlement, its damages were uncertain until the jury found that Federal did not unreasonably withhold its consent, which made the settlement agreement unenforceable. The jury verdict was returned on November 20, 2008, and was affirmed on appeal on August 10, 2009. The circuit court thus concluded that the cause of action did not accrue until the jury found that Federal did not unreasonably withhold its consent.

¶ 33 However, the court found that this did not end the analysis because, as defendants noted, the injury for which plaintiff sought damages in its complaint, namely a $22 million claim for the January 2005 settlement of the underlying litigation, was different from the injury plaintiff claimed as the trigger to refute defendants' statute of limitations defense, namely the $7.2 million verdict that it failed to obtain in the Delaware coverage litigation in November 2008.

¶ 34 The court, after acknowledging the inconsistency of plaintiff's damages claims in its complaint, further noted that plaintiff alleged that it lost its case against Federal on November 20, 2008, the date the jury in the Delaware case found that Federal had not unreasonably withheld its consent in the underlying case. The court further noted that in order to defeat defendants' claim that plaintiff's action was time-barred, plaintiff necessarily agreed that its damages were those at issue in the Delaware case, and not the earlier amount sought in the underlying case. The court further found that plaintiff cited no authority for its conclusion that a later injury could revive an untimely claim seeking recovery for an earlier injury. Accordingly, the court capped plaintiff's damages at $7.2 million, the amount that Federal would have paid under the settlement agreement, and partially granted defendants' section 2-619(a)(5) motion to dismiss. This ruling was memorialized in a written order the following day.

¶ 35 Plaintiff was subsequently granted leave to file a third amended complaint on or before October 5, 2015. On October 2, 2015, defendants Bragar Wexler and Eagel filed a motion seeking a finding of good faith settlement and dismissal of the action against the settling defendants with prejudice. According to the motion, defendants Bragar Wexler, Eagel, Franklin Law, Franklin, Kirby McInerney and Squire entered into a confidential settlement agreement with plaintiff. The circuit court granted the motion, and these defendants were dismissed from the case with prejudice.

¶ 36 On October 5, 2015, plaintiff filed its two-count third amended complaint against the remaining defendants, Bryan Cave and Thum.

¶ 37 In count I, professional negligence, plaintiff alleged that defendants held themselves out to members of the public and to plaintiff as being "able and experienced" in the practice of law in, and applying the law of, the State of Missouri. Plaintiff further alleged that defendants' conduct breached various sections of the Missouri Rules of Professional Conduct, that defendants gave negligent legal advice which led to an unenforceable settlement against Federal, and additionally that due to their negligent settlement advice, defendants wrongfully received legal fees which caused plaintiff to only recover $1.8 million of the $15.5 million judgment entered against Payless.

¶ 38 In count II, plaintiff alleged that Thum and Bryan Cave exhibited "complete indifference and/or conscious disregard of their professional obligations to their client" and that defendants failed to disclose a conflict of interest in the underlying case with the other attorneys, all of which resulted in liability for punitive damages under Missouri law. Plaintiff accordingly sought punitive damages.

¶ 39 Defendants filed a motion to strike plaintiff's third amended complaint on November 6, 2015. In their motion, defendants asserted that plaintiff sought to change its case by adding additional allegations that it had previously rejected in open court; added a new malpractice theory that it should have been fully aware of previously; provided no justification for its efforts to add a punitive damages claim at such a late date; and that plaintiff was simply prolonging the case to avoid summary judgment by filing a third amended complaint.

¶ 40    At a hearing on the motion to strike on May 12, 2016, the circuit court found that the new allegations in count II did not satisfy the *Loyola* factors and was untimely.  The court then partially granted defendant's motion by striking count II of plaintiff's third amended complaint.

¶ 41    Defendants subsequently filed a motion for summary judgment on July 27, 2016.  In their memorandum in support of summary judgment, defendants argued that:  (1) plaintiff could not demonstrate a genuine issue of fact as to the alleged malpractice based on its claim that Bryan Cave assured it that it would collect the Federal portion of the settlement or that Bryan Cave failed to advise plaintiff that Federal's failure to consent had to be unreasonable; (2) plaintiff could not demonstrate that Bryan Cave committed malpractice by failing to "set up" Federal adequately or do additional analysis to determine the strength of plaintiff's position against Federal after December 2004; (3) plaintiff could not demonstrate that it would have succeeded in the Delaware case had Bryan Cave taken the actions plaintiff claimed it should have; (4) plaintiff's claims were barred by the statute of limitations since it was on notice of its alleged injury once it incurred legal fees in the Delaware case; and even if plaintiff's claims could survive summary judgment, plaintiff should be limited to the $3.34 million it allegedly should have recovered from Federal without litigation, plus the amount of legal fees paid to Bryan Cave in connection with the Delaware case. Defendants further argued that plaintiff's new allegation that it was entitled to the full settlement amount despite its allocation agreement with Congress was baseless.

¶ 42    A hearing was held on defendants' motion on February 3, 2017, and the court issued its ruling on the motion on March 9, 2017.

¶ 43    In its ruling, the circuit court found that plaintiff raised genuine issues of material fact on the issues of whether defendants violated the standard of care in rendering advice regarding the

insurance aspect of the settlement and the extent of Thum's role in providing the legal advice. The court stated that plaintiff framed its case for malpractice on the failure of defendants to adequately advise it of the foreseeable risks of entering into the MOU without Federal's participation in the settlement negotiations. The court further found that the summary judgment motion based on the lack of proximate cause was premature as there had been no expert testimony. The court cautioned though that the motion could be renewed on that basis after expert witness depositions. The court then granted defendants' summary judgment motion on the issue of damages, and thus further limited plaintiff's potential recovery to $3.34 million, the amount it would have been entitled to under plaintiff's allocation agreement with Congress.

¶ 44    On July 17, 2017, the circuit court set the matter for trial on February 15, 2018, but granted defendants leave to renew their motion for summary judgment by August 25, 2017.

¶ 45    Defendants renewed their motion for summary judgment on September 1, 2017, arguing that plaintiff's experts failed to provide any evidence that the negligent advice of defendants led to the loss of the Delaware case. Defendants also renewed their assertion that the case was time-barred by the statute of limitations.

¶ 46    The hearing on defendants' renewed motion was held on January 8, 2018. On January 11, 2018, the circuit court granted defendants' renewed motion for summary judgment, finding that as a matter of law, plaintiff failed to raise a genuine issue of material fact as to proximate cause. The court found that plaintiff's transactional malpractice theory that it would have entered into a better settlement agreement but for defendants' negligence was too speculative. The court dismissed plaintiff's cause of action with prejudice in its entirety and this timely appeal followed.

¶ 47                                              ANALYSIS

¶ 48    On appeal, plaintiff contends that the circuit court erred when it: (1) partially granted defendants' section 2-619(a)(5) (735 ILCS 5/2-619(a)(5) (West 2012)) motion to dismiss and found that its damages were limited to the amount it would have recovered under the settlement agreement if the agreement had been enforceable in full on July 26, 2013; (2) partially granted defendants' motion to strike plaintiff's third amended complaint when it struck plaintiff's allegations of defendants' failure to disclose a conflict of interest and count II on May 12, 2016; (3) partially granted defendants' summary judgment motion and further limited its recoverable damages to $3.34 million on March 12, 2017; and (4) granted defendants' renewed motion for summary judgment as to proximate cause on January 11, 2018.  We shall discuss each of plaintiff's contentions in turn.

¶ 49                          A.  Partial Grant of Motion to Dismiss – July 26, 2013

¶ 50    Plaintiff first contends that the circuit court erred as a matter of law when it limited its recoverable damages to less than what it would have recovered in the underlying case had it been properly advised by defendants.  Plaintiff argues that defendants' motion to dismiss was before the court based on defendants' allegation that the action was filed outside the two-year statute of limitations.  Plaintiff contends that its action was timely filed because it did not suffer injury until the November 2008 jury verdict in the Delaware case. While plaintiff contends that the court properly found that its case was not time-barred, plaintiff maintains that the court improperly went beyond the issue before it to place restrictions on plaintiff's recoverable damages at the pleadings stage.  Plaintiff argues that it was thus precluded from proceeding on its case-within-a-case theory of legal malpractice.

¶ 51   Plaintiff further contends that the court erred by conflating its injury for accrual purposes with its recoverable damages, and that the injury is materially distinct from its recoverable damages. Specifically, plaintiff contends that the injury was the compromise of its "valuable claims" against Payless in exchange for a mediator's high-low settlement proposal based on defendants' deficient advice that the high end of such proposal could be enforced against Federal, despite the fact that Federal's policy obligations to Payless had not been triggered and was without Federal's consent. Plaintiff asserts that the damage was the jury verdict in the Delaware case that it could not enforce the settlement against Federal. Plaintiff concludes that its recoverable damages are what it would have recovered from Payless in the underlying case if it had not agreed to the settlement proposal. Accordingly, plaintiff contends that the circuit court's July 26, 2013, ruling that limited its damages as a matter of law was erroneous.

¶ 52   A section 2-619(a)(5) (735 ILCS 5/2-619(a)(5) (West 2016)) motion to dismiss provides that a defendant may file a motion to dismiss when a cause of action has not been brought in the time limited by law. *PSI Resources, LLC v. MB Financial Bank, National Ass'n*, 2016 IL App (1st) 152204, ¶ 28. A motion to dismiss under section 2-619 admits the legal sufficiency of all well-pleaded facts but allows for dismissal of claims barred by an affirmative matter defeating those claims or avoiding their legal effect. *Id.* A defendant who raises a statute of limitations affirmative defense has the initial burden of proving that the action in question was not commenced within the applicable limitations period. *Brummel v. Grossman*, 2018 IL App (1st) 162540, ¶ 23 (citing *Kirby v. Jarrett*, 190 Ill. App. 3d 8, 12 (1989)). Once defendant has met this burden, the plaintiff must set forth facts sufficient to avoid the statutory limitation. *Brummel*, 2018 IL App (1st) 162540, ¶ 23.

¶ 53    When ruling on a section 2-619 motion to dismiss, a circuit court must interpret all pleadings, affidavits, and other supporting documents in the light most favorable to the nonmoving party. *Id.* at ¶ 29.  If a complaint is filed after the running of the applicable statute of limitations, this is a valid reason for granting a section 2-619(a)(5) motion to dismiss. *Bororwic v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383 (2004).  An appeal from the grant of a section 2-619 motion to dismiss requires the same analysis as an appeal following the grant of a summary judgment; the reviewing court must determine if a genuine issue of material fact precludes such dismissal or whether dismissal was proper as a matter of law.  *Id.* at ¶ 30.  We make such determination using a *de novo* standard of review.  *Id.*

¶ 54    The statute of limitations for filing a legal malpractice claim is set forth in section 13-214.3 of the Code as follows:

> "[a]n action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services * * * must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought."  735 ILCS 5/13-214.3 (West 2012).

¶ 55    This statute of limitations incorporates the discovery rule, which delays commencement of the statute of limitations until the plaintiff knows or reasonably should have known of the injury and that it may been wrongfully caused. *Carlson v. Fish*, 2105 IL App (1st) 140526, ¶ 23. For purposes of legal malpractice, a client is not considered to be injured until he has suffered a loss for which he may seek monetary damages. *Id.*

¶ 56    In the case at bar, defendants alleged that plaintiff's cause of action was untimely because it knew as early as February 2005 that it was allegedly damaged by defendants' advice in the underlying case. The circuit court disagreed, finding that plaintiff's cause of action did not accrue until the jury reached an adverse verdict in the Delaware case. While the circuit court ultimately concluded that defendants' statute of limitations challenge to plaintiff's cause of action was without merit, the court however found that such ruling necessarily affected the applicable damages claimed by plaintiff. Specifically, the court found that plaintiff could only recover the amount it would have recovered if Federal had been obligated to perform under the initial settlement agreement.

¶ 57    Applying *de novo* review, we find that the trial court correctly determined that plaintiff's cause of action for legal malpractice did not accrue until the adverse ruling was received in the Delaware coverage case in 2008. While defendants may have given plaintiff negligent advice that led to the January 2005 settlement with Payless, the cause of action did not accrue until plaintiff discovered or reasonably should have discovered, his injury and ~~incurs~~ incurred damages directly attributable to counsel's neglect. See *Lucey v. Law Offices of Pretzel & Stouffer, Chartered*, 301 Ill. App. 3d 349, 353 (1998). Accordingly, we find that plaintiff's 2010 cause of action was commenced within the two-year statute of limitations.

¶ 58    We next turn our attention to plaintiff's contention that the circuit court improperly *sua sponte* limited its damages claim when ruling on defendants' motion to dismiss.

¶ 59    Here the record shows that defendants filed their motion to dismiss plaintiff's complaint on the basis that it was time-barred and additionally argued that plaintiff alleged inconsistent theories of damages in its complaint. Plaintiff responded to the motion and a hearing was held. All

parties were present and participated in the hearing. Therefore, the circuit court did not *sua sponte* rule on the issue of plaintiff's damages claim, but was ruling on an issue specifically raised by defendants. See *Smith-Silk v. Prenzler*, 2013 IL App (5th) 120456, ¶ 10. Moreover, even assuming arguendo that the circuit court *sua sponte* ruled on the damages claim, it was not improper to do so.

¶ 60 As our supreme court held in *Eastman v. Messner*, 188 Ill. 2d 404, 411-12 (1999), a plaintiff who obtains recovery in a legal malpractice case can be in no better position by bringing suit against the attorney than if the underlying action against the third-party had been successful; thus a plaintiff's damages in a legal malpractice suit are limited to the actual amount the plaintiff would have recovered had he been successful in the underlying case.

¶ 61 In this case, plaintiff alleged in its complaint that if the jury in the Delaware case had found in plaintiff's favor, the amount it would have been entitled to was $7,233,542.15 plus post-judgment interest from May 18, 2005. That was the amount that Federal would have been obligated to pay under the January 2005 settlement agreement, not a higher amount as plaintiff contends. Thus, plaintiff was not entitled to seek additional damages, and we conclude that the circuit court properly limited plaintiff's damages claim to $7.2 million.

¶ 62 B. Grant of Motion to Strike Count II of Third Amended Complaint – May 12, 2016

¶ 63 Plaintiff also contends that the circuit court erred in striking its allegations in count II of its third amended complaint that were based on defendants' failure to disclose their conflicts of interest and which sought punitive damages under Missouri law. Plaintiff argues that the court's ruling that it raised a new cause of action that was time-barred cannot be supported under the *Loyola* factors.

¶ 64    Decisions as to whether a pleading may be amended pursuant to section 2-616(a) of the Code (735 ILCS 5/2-616(a) (West 2016)) are committed to the sound discretion of the circuit court. *Lawry's The Prime Rib, Inc. v. Metropolitan Sanitary District of Chicago*, 205 Ill. App. 3d 1053, 1058 (1990).  Additionally, any cause of action set up in an amended pleading shall not be time-barred and shall be said to relate back to the date of the filing of the original pleading, so long as (1) the original pleading was timely filed and (2) it appears from the original and amended pleadings that the cause of action asserted grew out of the same transaction or occurrences set up in the original pleading. 735 ILCS 5/2-616(b) (West 2016).

¶ 65    In determining whether a trial court abused its discretion by denying leave to amend, Illinois courts must determine "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992).

¶ 66    During the hearing on defendants' motion to strike plaintiff's third amended complaint, the court found that the complaint attempted to raise a new cause of action in count II, specifically defendants' failure to disclose a conflict of interest, and which sought punitive damages under Missouri law, neither of which had been previously raised.  The court concluded that this cause of action was known to plaintiff earlier and was untimely.  The court also found that it did not satisfy the *Loyola* factors.

¶ 67    After reviewing the third amended complaint and the initial complaint, we find that the circuit court did not abuse its discretion in granting defendants' motion to strike count II of the

third amended complaint. The record reveals that plaintiff asserted for the first time in its third amended complaint that defendants had an undisclosed conflict of interest and sought punitive damages. By the time the third amended complaint was filed in October 2015, discovery had been closed for an extended period of time, and defendants had no notice of these allegations or opportunity to have discovery concerning them. Additionally, the statute of limitations expired in 2010, as determined by the circuit court's previous ruling on a motion to dismiss three years earlier. While it is true the claims of plaintiff's count II in the third amended complaint stemmed from defendants' representation during the underlying case and the Delaware case, the prior complaints did not give defendants notice of the facts underlying the later claims for conflict of interest. See *Grove v. Carle Foundation Hospital*, 364 Ill. App. 3d 412, 421 (2006). As such, count II of plaintiff's third amended complaint did not relate back to the original complaint and was barred by the statute of limitations.

¶ 68    In determining whether an amended pleading violates the statute of limitations, the critical inquiry is whether there is enough in the original description to indicate that plaintiff is not trying to slip in a new cause of action in violation of the spirit of the limitations act. *Avakian v. Chulengarian*, 328 Ill. App. 3d 147, 154 (2002) (citing *Simmons v. Hendricks*, 32 Ill. 2d 489, 497 (1965)). In the case at bar, plaintiff attempted to raise an entirely new cause of action five years after the expiration of the statute of limitations, which fails to satisfy two of the *Loyola* factors. As such, the circuit court did not abuse its discretion in striking count II of the third amended complaint, and properly found that such amendment was time-barred.

¶ 69                C. Partial Grant of Summary Judgment – March 9, 2017

¶ 70    Plaintiff further contends that the circuit court erred in partially granting defendants' motion for summary judgment and further limiting its recoverable damages to $3.34 million and further erred by rejecting plaintiff's supplemental damages disclosure on March 9, 2017.

¶ 71    Summary judgment should be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016); *Construction Systems, Inc. v. FagelHaber, LLC*, 2019 IL App (1st) 172430, ¶ 21. When deciding a motion for summary judgment, a trial court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the nonmovant. *Construction Systems*, 2019 IL App (1st) 172430, ¶ 21. Summary judgment should not be granted where the material facts are disputed or where, the material facts being undisputed, reasonable persons could draw different inferences form the undisputed facts. *Id.* We review the trial court's grant of summary judgment *de novo*. *Id.*

¶ 72    In the case at bar, in an earlier 2013 ruling as discussed earlier, the circuit court had already capped plaintiff's damages to the amount it would have recovered from Federal under the 2005 settlement agreement, namely $7.2 million. Subsequent to the filing of plaintiff's third amended complaint, defendants filed a motion for summary judgment, contending, among other things, that plaintiff was not entitled to more than it would have been entitled to originally, because of its 2005 agreement to the allocation of settlement proceeds with Congress.

¶ 73    Section 2(c) of the Illinois Joint Tortfeasor Contribution Act (Contribution Act) provides that a good-faith settlement reduces the recovery of a nonsettling tortfeasor to the extent of the amount stated in the release or actually paid for it. 740 ILCS 100/2(c) (West 2016). This provision

reflects the long-recognized principle in Illinois that a plaintiff shall have only one satisfaction for an injury. *Lard v. AM/FM Ohio, Inc.*, 387 Ill. App. 3d 915, 925-26 (2009). This provision also condemns and seeks to prevent a double recovery and reflects the public policy of protecting the financial interests of the nonsettling parties in a settlement. Allowing setoff ensures that a nonsettling party will not be required to pay more than its *pro rata* share of the shared liability. *Id.* at 926.

¶ 74    The January 2005 settlement agreement set forth the amount of the settlement and the allocation of the settlement proceeds between plaintiff and Congress from the insurance companies in the underlying case. Specifically, plaintiff would receive 46.4% of the amounts recovered against Federal if it prevailed in the subsequent arbitration. In a 2013 ruling, the circuit court found that plaintiff's cause of action for legal malpractice did not accrue until the Delaware case was decided, and further that plaintiff could only seek recovery of the amount it would have been entitled to recover from the Delaware case, which was approximately $7.2 million plus post-judgment interest. That amount represented the total amount that Federal would have paid plaintiff and Congress in satisfaction of the settlement agreement. However, as defendants pointed out to the court in their motion for summary judgment, pursuant to the allocation of proceeds contained in the settlement agreement, plaintiff was only entitled to 46.4% of that amount, or $3.34 million. As noted earlier, a plaintiff in a legal malpractice case can be in no better position than he would have been in had he prevailed in the underlying matter. *Eastman*, 188 Ill. 2d at 411-12. We therefore conclude that the circuit court properly granted summary judgment to defendants as a matter of law on the issue of further limitation of damages.

¶ 75                    D.  Grant of Summary Judgment – January 11, 2018

¶ 76    Finally, plaintiff contends that the circuit court compounded its earlier errors in its January 11, 2018, ruling, which granted summary judgment in favor of defendants, where there were genuine issues of material fact regarding proximate cause. Specifically, plaintiff argues that it provided evidence of the attorney-client relationship it had with defendants that gave rise to the duty of care owed with respect to the settlement agreement; it provided evidence of defendants' negligent advice and failures to disclose; and it provided proof of damages.

¶ 77    As stated above, summary judgment should be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016); *Construction Systems, Inc.*, 2019 IL App (1st) 172430, ¶ 21. Our review of the grant of summary judgment is *de novo*. *Id.*

¶ 78    In a cause of action for legal malpractice, a plaintiff must prove that: (1) its attorney owed it a duty of care resulting from an attorney-client relationship; (2) its attorney breached that duty of care; and (3) as a proximate cause of the breach, it suffered an injury. *Atkins v. Robbins, Salomon & Patt, Ltd.*, 2018 IL App (1st) 161961, ¶ 50. A legal malpractice suit is by its nature dependent upon a predicate lawsuit. *Nelson v. Quarles and Brady, LLP*, 2013 IL App (1st) 123122, ¶ 28. Thus, a legal malpractice claim presents a "case within a case." *Id.* No malpractice exists unless counsel's negligence has resulted in the loss of an underlying cause of action. *Id.* Further, the fact that the attorney may have breached his duty of care is not, in itself, sufficient to sustain the plaintiff's cause of action; even if negligence on the part of the attorney is established, no action will lie against the attorney unless that negligence proximately caused damage to the client.

*Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306-07 (2005).

¶ 79   Causation requires both proof of "cause in fact" and proof of "legal cause." *Thacker v. UNR Industries, Inc.*, 151 Ill. 2d 343, 354 (1992).  Courts generally use two tests when considering cause in fact:  the traditional "but for" test and the "substantial factor" test. *Id.*  Under the but-for test, a defendant's conduct is not a cause of an event if the event would have occurred without it. *Id.*  Under the substantial-factor test, the defendant's conduct is said to be a cause of an event if it was a material element and a substantial factor in bringing the event about. *Id.* at 354-55.  Legal cause is a question of foreseeability; a negligent act is a proximate cause of an injury if the injury is of a type which a reasonable person would see as a likely result of his conduct. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 456 (1992).

¶ 80   Based on earlier rulings as well as allegations contained in plaintiff's pleadings, the court determined that plaintiff's cause of action was transaction-based legal malpractice.  In such cases, proving a case-within-a-case is not always required where damages can otherwise be established. *Union Planters Bank, N.A. v. Thompson Coburn LLP*, 402 Ill. App. 3d 317, 344 (2010).  An attorney's liability for failing to advise a client of the foreseeable risks attended to a given course of legal action is predicated on the client's exposure to a risk that the client did not knowingly and voluntarily assume. *Id.*  To establish the element of proximate cause, it is necessary for the client to plead and prove that had the undisclosed risk been known, he or she would not have accepted the risk and consented to the recommended course of action. *Id.*

¶ 81   Here, the circuit court previously determined that plaintiff's recoverable damages were the amounts it could have recovered from Federal if it had been successful in the Delaware case, which

was the amount of the January 2005 settlement, less the amount allocated to Congress. Therefore, as to proximate cause, the court found that the issue was whether defendants' negligence contributed to the loss of the Delaware case against Federal.

¶ 82    Plaintiff's argument on appeal ignores the circuit court's many rulings below. Despite the circuit court's rulings that any claims related to the January 2005 settlement agreement were time-barred as plaintiff did not file its initial complaint until October 2010, and that only plaintiff's claims related to the loss of the Delaware case fell within the statute of limitations, plaintiff attempted several times in the proceedings below (and continues on this appeal) to argue that defendants' negligent advice caused it to enter into the settlement agreement in the first place and its subsequent loss of the Delaware case. While it is true that the Delaware case occurred as a result of the chain of events from the underlying case, it does not necessarily follow that defendants' allegedly negligent advice in 2005 concerning Federal's obligations under the settlement agreement in the underlying case was the proximate cause of the loss of the Delaware case in 2008.

¶ 83    As defendants noted in their summary judgment motion and as plaintiff noted in its own pleadings, Federal was the first-tier excess insurer of Payless. AIG was the first-tier insurer, up to $10 million of liability. AIG's policy limits were not reached prior to the arbitration; thus Federal's policy was not yet triggered. Moreover, as determined in the Delaware case, Federal had no obligation to pay any amounts of the settlement agreement as it did not consent to the settlement and such consent was not unreasonably withheld. As such, regardless of defendants' advice to plaintiff in 2005, Federal never had any obligation to contribute to the settlement. Therefore,

plaintiff cannot meet its burden of proving causation, and there was no genuine issue of material fact that precluded summary judgment on causation.

¶ 84    Additionally, and most importantly, any issues concerning defendant's allegedly negligent advice in the underlying case were time-barred by the time that the instant case was filed in 2010.

¶ 85    The circuit court did not err in granting summary judgment in favor of defendants.

¶ 86                              CONCLUSION

¶ 87    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 88    Affirmed.